IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| M.O., a minor by his Mother and Next Friend, C.O., and C.O., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:21-cv-00769 (RDA/JFA) ) |
| FAIRFAX COUNTY SCHOOL BOARD, | ) ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiffs' Motion to Disqualify Counsel ("Motion"). Dkt. 18. The Court dispenses with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). Considering the Motion (Dkt. 18), Plaintiffs' Memorandum in Support (Dkt. 19), Defendant's Opposition (Dkt. 39), and Plaintiffs' Reply (Dkt. 40), the Court DENIES the Motion for the reasons that follow.

### I.  BACKGROUND

Plaintiffs include M.O., who was 16 at the time of the due process hearing, and his mother C.O. They bring an action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2), seeking to overturn the determination of an independent administrative Hearing Officer ("Hearing Officer") denying Plaintiffs' claims for certain educational services reimbursement. Dkt. Nos. 9; 37-8 at 8117. For purposes of assessing the Motion, Plaintiffs allege a number of facts related to a meeting involving Ms. Emily Haslebacher on October 24, 2018. On that date, C.O. attended a meeting at the law office of Belkowitz Law, PLLC ("Belkowitz Law") after completing a "2018 Prospective Education Client Questionnaire." At the meeting were three

attorneys, including Ms. Emily Haslebacher, who now works for a different law firm and represents Defendant in this matter.  Over the course of the approximately three-hour meeting, C.O. discussed with Ms. Haslebacher and her colleagues matters related to M.O.'s "disabilities, his [Individualized Education Programs ("IEPs")], his evaluations, about actions and inactions taken by [Defendant] to include issues that are presented in the case at bar . . . and other pertinent related documents" as well as a document known as the "Hot Topics" report.  Dkt. 19 at 2.  One of Defendant's employees prepared the "Hot Topics" report, which involved information related to students other than M.O. for the 2015 through 2017 academic school years.  Dkt. 39 at 9.  C.O. discussed the potential utility of the report for her case with Ms. Haslebacher and her colleague as C.O. had not yet filed her petition for a due process hearing against Defendant.

C.O. also shared with Ms. Haslebacher a recording of a meeting with employees of Defendant on August 15, 2018, without the knowledge of those employees, which purportedly revealed information harmful to Defendant with respect to M.O.'s IEP report and Defendant's general protocols.  Dkt. 19 at 3.  After roughly two hours, Ms. Haslebacher states in her declaration that she "left the meeting and did not return."  Dkt. 39-11 ¶ 6.[1]  At the conclusion of the meeting, one of Ms. Haslebacher's then-colleagues advised C.O. that they would not represent Plaintiffs on a contingent basis but rather would require an immediate fee of at least $15,000 to proceed.  C.O. declined and did not engage in representation with Belkowitz Law on that matter.  About a year later, on September 9, 2019, Ms. Haslebacher left her employment at Belkowitz Law and joined her present firm, Blankingship & Keith, P.C., retaining "no notes, documents, or data of any kind

---

[1] Plaintiffs contest this fact and allege that Ms. Haslebacher was "the only lawyer present during the entire meeting."  Dkt. 19 at 6; Dkt. 41 ¶ 6.

2

related to Belkowitz Law clients or prospective clients, including Plaintiff." Dkt. Nos. 39 at 10; 39-11 ¶¶ 6, 9.

On August 26, 2020, Plaintiffs made a *pro se* request for an administrative due process hearing against Defendant in connection with M.O.'s special education programming for the 2020-21 school year. Dkt. 37-7 at 8106. On November 30, 2020, the Hearing Officer found that Defendant had provided M.O. with a free and appropriate public education ("FAPE") in assessing Defendant's proposed September 2, 2020 Individualized Education Program ("IEP"). Dkt. 37-9 at 8126-29. On May 27, 2021, C.O. appealed the Hearing Officer's decision to the Circuit Court of Fairfax County on behalf of M.O. Dkt. 1-2. On June 28, 2021, Defendant removed the matter to this Court. Dkt. 1. On August 13, 2021, Plaintiffs filed an Amended Complaint (Dkt. 9) and on September 13, 2021, Defendant filed an Answer (Dkt. 10). This Court then issued a scheduling order setting an initial pre-trial conference for December 1, 2021, a final conference for March 17, 2022, and a discovery deadline of March 11, 2022. Dkt. 12. On December 1, 2021, the Magistrate Judge adopted Defendant's discovery plan with some modifications. Dkt. Nos. 16-17.

On December 25, 2021, Plaintiffs moved to disqualify defense counsel and then corrected their brief in support of the Motion two days later on December 27, 2021, to properly advise the Defendant of Plaintiffs' desire for a hearing on the Motion before this Court. Dkt. Nos. 18-19; 21. That same day, Plaintiffs filed a motion to suspend discovery until this Court resolved the disqualification matter and this Court granted that suspension on December 28, 2021 pending resolution of the disqualification matter. Dkt. Nos. 20; 22. Defendant filed a twelve-volume administrative record on January 3 and January 4, 2022. Dkt. Nos. 26-37. Plaintiffs filed a notice of hearing date on the Motion on January 10, 2022. Dkt. 38. That same day, Defendant filed an

3

opposition to the Motion. Dkt. 39. Plaintiffs timely filed their Reply on January 18, 2022. Dkt. 40.

## II.  STANDARD OF REVIEW

Disqualification of counsel is justified when a conflict of interest is not just conjectural, but is actual or likely. *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990). When a court considers whether to grant a motion to disqualify, it must first consider "the fundamental principle of a party's right to choose its counsel." *Audio MPEG, Inc. v. Dell, Inc.*, 219 F. Supp. 3d 563, 569 (E.D. Va. 2016). The court should next consider "the pivotal confidential relationship between a party and its attorney." *Id.* "Third, the court should satisfy itself that the potentially conflicted attorney's relevant cases are 'substantially related.'" *Id.* at 570; *see also Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, 727 F. Supp. 2d 469, 472 (E.D. Va. 2010).

The party seeking to disqualify opposing counsel bears a "high standard of proof" to show that disqualification is warranted. *Tessier*, 731 F. Supp. at 729 (citing *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)). Even so, the Fourth Circuit has held that "[i]n determining whether to disqualify counsel for conflict of interest, the trial court . . . with a view of preventing the appearance of impropriety, is to resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977). Although all doubts must be resolved in favor of disqualification, the Fourth Circuit has also made clear that "the drastic nature of disqualification requires that courts . . . always remain mindful of the . . . possibility of misuse of disqualification motions for strategic reasons." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992).

In considering violations of ethical rules of conduct, courts must consider the overarching question of whether a violation of such rules "will undermine, or seriously threaten to undermine,

4

the integrity of judicial proceedings." *United States v. Perry*, 30 F. Supp. 3d 514, 535 (E.D. Va. 2014). In short, the evaluation of a disqualification motion requires balancing the client's free choice of counsel against the maintenance of the highest ethical and professional standards in the legal community. *See Tessier*, 731 F. Supp. at 729.

### III.  ANALYSIS

#### A.  Compliance with This Court's Local Rules and Scheduling Order

Defendant argues that Plaintiffs failed to consult with Defendant "prior to filing" the Motion which is "contrary" to Local Rule 7(E) and paragraph 11 of the Court's Rule 16(B) Scheduling Order. Dkt. 39 at 9, 11-12. Local Rule 7(E) provides that "*[b]efore endeavoring to secure an appointment for a hearing on any motion*, it shall be incumbent upon the counsel desiring such hearing to meet and confer in person or by telephone with his or her opposing counsel in a good-faith effort to narrow the area of disagreement." Loc. Civ. R. 7(E) (emphasis added). As Plaintiffs rightly argue, this obligation to confer does not have to predate the filing of a motion. *See* Dkt. 40 at 5-6. It merely requires conferring with opposing counsel in advance of scheduling a hearing, which Defendant has not alleged Plaintiffs failed to do.

Paragraph 11 of the Court's Rule 16(B) Scheduling Order also provides that "[a]ll motions must contain a statement that a good-faith effort to narrow the area of disagreement has been made in accordance with Local Civil Rule 7(E) and Local Civil Rule 37(E) for discovery motions." Dkt. 17 ¶ 11(a). Again, this provision does not establish that Plaintiffs' Motion was filed in a procedurally defective manner. A motion to disqualify counsel is not listed as a discovery motion under Federal Rule of Civil Procedure 37 and the grounds for the Motion are not rooted in factual material specific to the discovery process. As a result, Defendant has not demonstrated a legitimate basis for deeming the Motion procedurally flawed.

B. Delay in Filing the Motion

The Court "'remain[s] mindful of the . . . possibility of misuse of disqualification motions for strategic reasons.'" *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, 436 F. Supp. 3d 870, 874 (E.D. Va. 2020) (quoting *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992)). Even so, litigants appearing before this Court are cautioned that motions brought for solely tactical reasons tax judicial resources and are ill-advised and not favored. Here, Defendant's Opposition questions the validity of Plaintiffs' Motion after considering that defense counsel entered her appearance in this matter after filing the Notice of Removal on June 28, 2022. Dkt. 39 at 3; Dkt. 1. This Court recognizes that such a delay certainly questions the Motion's legitimacy—especially following extensive filings before this Court and the start of discovery. However, this Court also considers C.O.'s declaration that she simply overlooked the matter until the middle of December and was made aware of the potential conflict as a result of her counsel. Dkt. 41 ¶¶ 12-19.[2] While this Court is not convinced that the Motion was filed purely for strategic purposes, this Court instructs Plaintiffs' counsel going forward, to discuss the backgrounds of opposing counsel with their clients at the time such counsel appear in a matter rather than waiting nearly six months into the case.

When the parties resume discovery in short order, they should bear in mind that continuances or extensions are not granted in this District due to the "[m]ere failure on the part of counsel to proceed promptly with the normal processes of discovery." Loc. Civ. R. 16(B).

---

[2] Alleging conflicts against Defendant's counsel is not an issue of first impression in this matter. Indeed, before Plaintiffs retained counsel, during the due process hearing, Plaintiffs alleged a conflicts issue with a different attorney for Defendant, which the Hearing Officer denied. Dkt. 36-3 at 7802.

C.  The Witness Advocate Rule

Plaintiffs also move to strike Defendant's Opposition on the basis that defense counsel appended a declaration related to her recollection of the events giving rise to Plaintiffs' Motion and, consequently, has "now become a fact-witness which clearly violates the 'witness-advocate rule'." Dkt. 40 at 1. Plaintiffs rely on *Perry* to assert that defense counsel should be subject to Virginia Rule of Professional Conduct 3.7. *Id.*; *Perry*, 30 F. Supp. 3d at 526-30. That rule states that:

> A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

Considering the issue that Plaintiffs failed to properly file a separate motion before this Court and the fact that, on a party's motion, briefs cannot be stricken, only withdrawn,[3] Plaintiffs misapprehend the witness-advocate rule and its applicability. As the *Perry* court explained, the witness-advocate rule applies when an attorney is "likely to be a necessary witness" *on behalf of their client*. *See* 30 F. Supp. 3d at 537-39. To be sure, defense counsel has not sought to testify and this Court sees no grounds to suggest why defense counsel would likely be a necessary witness on behalf of her client at trial. Therefore, Plaintiffs submit no cognizable claim why defense

---

[3] Rule 12(f) of the Federal Rules of Civil Procedure empowers this Court to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added). Moreover, Federal Rule of Civil Procedure 7 distinguishes pleadings from motions. *See also Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624 v. Virginia Int'l Terminals*, 904 F. Supp. 500, 504 (E.D. Va. 1995) (noting that plaintiff's motion to strike defendant's reply brief was an improper challenge considering the Federal Rules of Civil Procedure); *Structural Concrete Prods., LLC v. Clarendon Am. Ins.*, 244 F.R.D. 317, 321 (E.D. Va. 2007) (noting that Rule 7(a) provides the categories of filings that constitute pleadings for purposes of Rule 12(f) and further finding that briefs filed in response to motions do not qualify as pleadings).

counsel's declaration in connection with the Motion should cause Defendant's Opposition to be withdrawn.

### D.  Grounds for Disqualification

Turning to the merits of the Motion, Plaintiffs bring their disqualification motion on the grounds that Plaintiffs should be considered former clients of Belkowitz Law and that, as a result of Ms. Haslebacher's prior involvement with Plaintiffs at that firm, Ms. Haslebacher is conflicted out of representing Defendant in the present case.  In support of their proposition that they were a former client of Belkowitz Law and of Ms. Haslebacher, Plaintiffs cite the test applied in this circuit for assessing whether an attorney-client privilege has been formed.  *See, e.g.*, *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003).  Dkt. 19 at 6.  After outlining how Ms. Haslebacher's role in meeting with Plaintiffs on October 24, 2018 demonstrates Ms. Haslebacher's attorney-client privilege owed to Plaintiffs, Plaintiffs flag that defense counsel never obtained a waiver to such conflict and that Plaintiffs never consented to Ms. Haslebacher's representation of Defendant.  *Id.* at 8.  As a result, Plaintiffs submit that Ms. Haslebacher and her firm are in violation of Virginia Rule of Professional Conduct 1.9, which governs conflicts of interest for former clients.

Defendant contends that the proper conflicts framework lives not in Virginia Rule of Professional Conduct 1.9 but in Rule 1.18.  That rule governs a lawyer's duties to a prospective client.  Rule 1.18 provides that "[a] person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client."  Va. R. Prof'l Conduct 1.18(a).  When an attorney-client relationship has not been formed, a lawyer must not "represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that

could be significantly harmful to that person in the matter . . . ." Va. R. Prof'l Conduct 1.18(c) (2021). The Virginia State Bar's comments to Rule 1.18 further provide that:

> [t]he principal of loyalty diminishes in importance if the sole reason for an individual lawyer's disqualification is the lawyer's initial consultation with a prospective new client with whom no client-lawyer relationship is formed, either because the lawyer detected a conflict of interest as a result of an initial consultation, or for some other reason (*e.g., the prospective client decided not to retain the firm*).

*Id.* at cmt. 1 (emphasis added).[4] That diminution in loyalty is evidenced by the requirement that the prior matter be "substantially related" to the present and that the lawyer obtained information from the prospective client in the prior matter that "could be significantly harmful" to that prospective client in the present matter.

A Rule 1.18 conflict analysis builds on the framework applied for former clients in light of disqualification motions. That analysis requires (1) assessing whether the matter presents an actual or likely conflict of interest and (2) determining whether the first matter is substantially related to the second. *Tessier*, 731 F. Supp. at 728-30. The Court in *Rd. King Dev., Inc. v. JTH Tax LLC*, 540 F. Supp. 3d 554, 561 (E.D. Va. 2021) also asked whether the interests of the opposing counsel's present client are adverse to the interests of the former client and whether the moving party does not consent. The involvement of a former prospective client adds the requirement that the lawyer subject to the disqualification motion received confidential information that is "significantly harmful" to the former prospective client in the present case. *See, e.g.*, *Dahleh v. Mustafa*, No. 17-C-8005, 2018 WL 116675, at *2 (N.D. Ill. March 5, 2018); *Bell v. Cumberland Cty.*, No. 9-6485, 2012 WL 1900570, at *8 (D.N.J. May 23, 2012); *Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 F. Supp. 2d 896, 900 (W.D. Mich. 2009).

---

[4] Virginia's Rule 1.18 is modeled after the American Bar Association's Model Rule of Professional Conduct 1.18.

This Court agrees that Plaintiffs are former prospective clients of Belkowitz Law at the time of their meeting with Ms. Haslebacher and her colleagues on October 24, 2018. By Plaintiffs' own admission, they decided not to retain the firm after a single three-hour consultation. Dkt. 41 ¶¶ 8-10. That reason alone justifies the former prospective client determination since Virginia State Bar's commentary to Rule 1.18 confirms the decision not to retain a firm makes a party a prospective client. Va. R. Prof'l Cond. 1.18 cmt. 1.

Because this Court has adopted Rule 1.18 as the analytical framework for assessing Plaintiffs' Motion, this Court will proceed first by determining whether a likely or actual conflict of interest exists as a result of C.O.'s October 24, 2018 meeting with Ms. Haslebacher. Then, this Court will assess whether the matters discussed in October 2018 are "substantially related" to the matters before this Court. Lastly, this Court will address whether the confidential information disclosed to Ms. Haslebacher rose to the level of potentially posing a "significant[] harm[]" to Plaintiffs in the present matter as a gauge for whether any potential conflict would "undermine, or seriously threaten to undermine, the integrity of judicial proceedings." *Perry*, 30 F. Supp. 3d at 535.[5]

For the reasons that follow, although this Court finds a conflict of interest exists, the matters discussed were not substantially related to the matters considered in the administrative proceeding and would not significantly harm Plaintiffs in this case.

1. Conflict of Interest

---

[5] There is no disagreement among the parties regarding the adverse nature of Plaintiffs' interests as former prospective clients of Ms. Haslebacher and Ms. Haslebacher's current client, the Defendant. There is also no contention that Ms. Haslebacher received a waiver from Plaintiffs to act as counsel for Defendant.

The Court first must determine whether Ms. Haslebacher's consultation with C.O. presents an actual or likely conflict of interest. Defendant has selected Ms. Haslebacher as its counsel, and that choice is due considerable weight because the right to choose one's own counsel is a "fundamental principle" in our system. *Audio MPEG*, 219 F. Supp. 3d at 569. To be certain, "this right is secondary to the court's duty to maintain the integrity of the bar." *Id.* (citation omitted). That is why courts must consider the "pivotal confidential relationship between a party and its attorney[.]" *Id.* But before overturning a party's decision by disqualifying its chosen counsel, a court should be certain that "an attorney-client relationship has been established" in the relevant prior matter. *Tessier*, 731 F. Supp. at 731. The Fourth Circuit's test for attorney-client privilege provides a helpful roadmap for when a lawyer-client relationship has been formed:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Grand Jury*, 341 F.3d at 335. Summarized more succinctly, other courts have found that privileged relationship to exist if a party shows "(1) that it submitted confidential information to a lawyer, and (2) it did so with the reasonable belief that the lawyer was acting as the party's attorney." *Black Rush Min., LLC v. Black Panther Min.*, 840 F. Supp. 2d 1085, 1090 (N.D. Ill. 2012); *see also Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319-20 (7th Cir. 1978) (disqualifying a law firm on the basis that while there was no "express attorney-client relationship," the law firm had received confidential information from the former prospective client under the guise of an "implied professional relation."). If such a relationship has been

11

established, the Court must give weight to the "irrebuttable presumption" that a conflict exists due to that relationship. *Tessier*, 731 F. Supp. at 731.

During the October 24, 2018 meeting with Ms. Haslebacher, Plaintiffs submit that C.O. provided "sufficient confidential information" to Ms. Haslebacher and her colleagues that Plaintiffs claim Ms. Haslebacher retains in her "possession." Dkt. 40 at 3-4. Plaintiffs specify that the information conveyed to Ms. Haslebacher included (1) the Virginia Department of Education's ("VDOE") Letter of Findings "in which [Defendant] was found not to be in compliance [with] FERPA and IDEA regulations;" (2) discussion of the "Hot Topics" report; (3) a recording of a meeting with employees of Defendant on August 15, 2018, without the knowledge of those employees, which purportedly revealed information harmful to Defendant with respect to M.O.'s IEP report and Defendant's general protocols; (4) alleged disclosure by Defendant of C.O.'s name to "at least two parents of the children discussed" in the "Hot Topics" report; and (5) "virtually every detail of [M.O.'s] case against [Defendant] leaving out nothing." Dkt. 19 at 3; Dkt. 41 ¶¶ 3-5, 7.

Taken together, Plaintiffs provide a plausible basis to believe that a lawyer-client relationship was formed because (1) C.O. sought to become a client of Belkowitz Law and, by extension, Ms. Haslebacher; (2) the aforementioned communications were made to Ms. Haslebacher, a member of the Virginia State Bar at the time of the disclosure; (3) the communication involved facts disclosed primarily to secure legal services; and (4) Plaintiffs claim the privilege. While Belkowitz Law never committed to representing Plaintiffs in the matter presented before them on October 24, 2018, the engagement plausibly involved the sharing of confidential communications couched in Plaintiffs' reasonable expectation that there was an "implied professional relation." *Westinghouse*, 580 F.2d at 1319. That implied professional

12

relationship imputed a fiduciary obligation upon the attorneys present, including Ms. Haslebacher, to preserve C.O.'s confidences surrounding her and M.O. *Id.* Therefore, there is an irrebuttable presumption that C.O. shared confidential information with Ms. Haslebacher at the October 24, 2018 meeting. *Tessier*, 731 F. Supp. at 731.

## 2. Substantial Relatedness

Despite finding that Ms. Haslebacher held a fiduciary duty of loyalty with respect to the confidential information shared with her by C.O. on October 24, 2018, disqualifying Ms. Haslebacher in the present matter requires a showing that the confidential matters discussed in 2018 were substantially related to the matters before this Court. "The purpose of the 'substantial relationship' test is to prevent an attorney from appearing against [a] former [prospective] client whenever there is reasonable probability that confidences were disclosed in prior representation which could be used against [the] former client in subsequent litigation." *Rd. King*, 540 F. Supp. 3d at 562. In conducting the substantial similarity analysis, courts assess whether the two matters in question are "identical" or "essentially the same." *Tessier*, 731 F. Supp. at 730 (citing *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739-40 (2d Cir. 1978) and *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 501 F. Supp. 326, 328-29 (D.D.C. 1980)). Courts consider a non-exhaustive list of factors in order to make a holistic determination on the relatedness of the matters. *Tessier*, 731 F. Supp. at 730. That list includes the issues and facts underlying the matters, the time frames of the facts anchoring each case, the causes of action, and the parties involved in each matter. *Id.* at 731.

Plaintiffs contend that the matters are substantially similar because the chief purpose of their consultation with Belkowitz Law was to lodge a due process claim against Defendant. Dkt. 40 at 4. Although Plaintiffs did not officially file their claim against Defendant before the Hearing

Officer until August 26, 2020, Plaintiffs submit that the materials discussed at the October 24, 2018 were substantially related to the materials undergirding the matter which is now on appeal before this Court.  *Id.*

Ms. Haslebacher, in turn, argues that C.O. "briefly consulted Ms. Haslebacher's former boss . . . in which she sat in on only a portion—about other issues" not central to the administrative hearing which is on appeal before this Court.  Dkt. 39 at 3.  While Ms. Haslebacher cannot recall the specific details of the October 2, 2018 meeting, she can remember observing C.O. and her lead partner discuss general topics related to M.O.'s "special education programming as of that time," Defendant's most recently proposed IEP of August 15, 2018, and the "Hot Topics" report, which related to other students and not M.O.  Ms. Haslebacher does not believe the matters discussed by C.O. were substantially similar to the matters on appeal before this Court.

This Court agrees that, while the matters discussed in the October 24, 2018 meeting were certainly related to the matters on appeal before this Court, they were not central or meaningful to this case.  Most of the issues discussed were not confidential because they were not specific to C.O. or M.O.  Furthermore, the potentially confidential issues raised by C.O. have not been shown to survive the two-year statute of limitations pursuant to 20 U.S.C. § 1415(f)(3)(C) of the IDEA imposed by the Hearing Officer, which made all "issues and evidence presented in this case [] limited to August 26, 2018 and thereafter."  Dkt. 36-4 at 7826.  This Court owes substantial deference to the record considered by the Hearing Officer in the administrative proceeding.[6]

---

[6] In order to prevent the administrative hearing from becoming a "mere dress rehearsal," courts are constrained by the record established before the administrative court in IDEA matters like the case before this Court.  *Id.* (adopting the First Circuit's analysis in *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 997 (1st Cir. 1990)).  Because this Court "lack[s] the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy," substantial deference is given to the matters considered by the Hearing Officer in the administrative proceeding.  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v.*

Returning to C.O.'s declaration of the matters disclosed in Ms. Haslebacher's presence, only two categories of information were potentially confidential. C.O. specifies that the information conveyed to Ms. Haslebacher included (1) the Virginia Department of Education's ("VDOE") Letter of Findings "in which [Defendant] was found not to be in compliance [with] FERPA and IDEA regulations;" (2) discussion of the "Hot Topics" report; (3) a recording of a meeting with employees of Defendant on August 15, 2018, without the knowledge of those employees, which purportedly revealed information harmful to Defendant with respect to M.O.'s IEP report and Defendant's general protocols; (4) alleged disclosure by Defendant of C.O.'s name to "at least two parents of the children discussed" in the report; and (5) "virtually every detail of [M.O.'s] case against [Defendant] leaving out nothing." Dkt. 19 at 3; Dkt. 41 ¶¶ 3-5, 7.

The first category of information is in no way confidential information as Defendant would have unfettered access to VDOE findings. Likewise, the "Hot Topics" report never addresses C.O. or M.O. and, more importantly, was drafted by Defendant. Nothing confidential to C.O. or M.O. was disclosed to Ms. Haslebacher on that score.[7] That leaves this Court with three categories of potentially privileged information: (1) a secretly recorded conversation of employees of Defendant on August 15, 2018; (2) discussion around C.O.'s name being disclosed to parties named in the "Hot Topics" report and (3) C.O.'s general case against Defendant and the associated details of M.O.'s condition.

---

*Rowley*, 458 U.S. 176, 208 (1982) (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973)).

[7] This Court notes that the "Hot Topics" report contained information about students for the 2015 through 2017 academic school years, which falls well outside the August 26, 2018 cut-off date required by the IDEA statute of limitations for evidence considered in this case.

15

However, C.O. fails to specify that any of this confidential information pertained to issues or events arising on or after August 26, 2018. Indeed, a tight two-month window existed where Plaintiffs could have raised substantially similar facts that were considered in the administrative hearing. Although the Hearing Officer's ruling makes no specific mention of events occurring within that time period, the administrative record does note a "VDOE-Facilitated IEP Meeting #1" which occurred during that period on October 5, 2018. Dkt. 37-6 at 8095. But Plaintiffs do not claim that confidential details arising at or after that meeting were disclosed in Ms. Haslebacher's presence. As a result, the three categories of confidential information cannot be deemed substantially similar to the facts underlying the administrative ruling on appeal before this Court. Therefore, there are no adequate grounds to find that the confidential information disclosed to Ms. Haslebacher meets the "high burden" necessary to satisfy the substantial relatedness test and disqualify counsel. *Rd. King*, 540 F. Supp. 3d at 561, 564.

3. Significant Harm

Even if Plaintiffs successfully demonstrated that the facts and issues discussed were substantially related to the facts and issues on appeal before this Court, Plaintiffs still must show that the confidential information disclosed to Ms. Haslebacher could "significantly harm" Plaintiffs' case before this Court. The "significant harm" analysis under Rule 1.18 is "exquisitely fact-sensitive and -specific." *O Builders Assocs., Inc. v. Yuna Corp. of N.J.*, 19 A.3d 966, 978 (N.J. 2011). Moreover, the moving party must establish that the information disclosed "could have any impact on the proceeding" before the Court. *In re Marriage of Perry*, 293 P.3d 170, 176 (Mont. 2013) (applying the same Rule 1.18 construct used by the Virginia State Bar). If the Court determines the information that could be "significantly harmful" "was generally known by the parties," the Court may find that no such significant harm was caused. ABA Comm. On Ethics

& Prof'l Responsibility, Formal Op. 492, at 8 (2020) (citing *Mayers v. Stone Castle Partners*, 1 N.Y.S.3d 58, 62 (1st Dept. 2015)). All in all, the potential harm to Plaintiffs must rise to a level that could "undermine, or seriously threaten to undermine, the integrity of judicial proceedings." *Perry*, 30 F. Supp. 3d at 535.

Importantly, Ms. Haslebacher did not represent Defendant in the evidentiary hearing and therefore the significant harm analysis turns on how Ms. Haslebacher's presence at the October 24, 2018 meeting could significantly harm Plaintiffs' case *on appeal*. The record from the evidentiary hearing has become a closed universe, removing any considerations specific to events arising prior to August 26, 2018 due to the IDEA's two-year statutory limitations period. 20 U.S.C. § 1415(f)(3)(C).

On the topic of significant harm, Plaintiffs merely argue that because Ms. Haslebacher was unable to recall specific information, she contradicted herself by also claiming she did not possess any harmful information from that meeting. Dkt. 40 at 6. However, the terms "recollection" and "possession" are not necessarily coexistent from an analytical standpoint. Ms. Haslebacher may very well only recall general topics and, because of such limitations, be unable to bring to bear anything that would be significantly harmful to Plaintiffs in this case.

Even if Ms. Haslebacher did recall the specific information Plaintiffs alleged they discussed with her in 2018, Plaintiffs still would have not made a showing of how any of that information would significantly harm their case on appeal before this Court. Without a stronger evidentiary basis, this Court cannot conceive of any plausible significant harm either. Indeed, the Hearing Officer's decision related to her assessment of Defendant's proposed September 2020 IEP and a number of developments M.O. had made in the years following the C.O.'s 2018 meeting with Ms. Haslebacher. *See, e.g.*, Dkt. 37-9 at 8125. And while Plaintiffs seek reimbursement for

the expenses C.O. incurred for M.O.'s education expenses "resulting from Defendant's continued failures to provide M.O. with a FAPE," because Defendant has "a history of ineffectively providing M.O. with special education services," the Hearing Officer limited her ruling to the proposed IEPs occurring after August 26, 2018 that C.O. rejected. Dkt. 37-9 at 8122, 8125.

In doing so, the Hearing Officer's ruling, which is the subject of this appeal, cabined the record such that a substantial amount of new information emerged relevant to this appeal *after* the October 24, 2018 meeting. *See Marriage of Perry*, 293 P.3d at 176-77 (finding no impact on the proceedings when counsel entered into the proceeding three years after its incipiency, "by which time substantially more information had been disclosed"). Nothing Plaintiffs allege leads this Court to believe that the information disclosed to Ms. Haslebacher by C.O. on October 24, 2018 would "undermine, or seriously threaten to undermine, the integrity of judicial proceedings." *Perry*, 30 F. Supp. 3d at 535. Therefore, Plaintiffs have not demonstrated that the confidential information disclosed to Ms. Haslebacher could "significantly harm[]" their case before this Court. *Id.*

## IV. CONCLUSION

For these reasons, it is hereby ORDERED that Plaintiffs' Motion (Dkt. 18) is DENIED; and it is

FURTHER ORDERED that the stay on discovery imposed by this Court is lifted; and it is

FURTHER ORDERED that the original discovery obligations and deadlines remain in place.

It is SO ORDERED.

Alexandria, Virginia
January 27, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge

18